UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

U.S. WATER SERVICES, INC.,            Case No. 13-CV-1258 (PJS/JSM)

        Plaintiff,

v.                                                             ORDER

WATERTECH OF AMERICA, INC. and
SVEINN STORM,

        Defendants.

---

Michael D. Schwartz and Brandon M. Schwartz, SCHWARTZ LAW FIRM, for plaintiff.

Nicole J. Druckrey, QUARLES & BRADY LLP, for defendants.

Plaintiff U.S. Water Services, Inc. ("U.S. Water") is in the business of water-treatment sales and services. In 2006, U.S. Water hired defendant Sveinn Storm. At the time he was hired, Storm signed an employment agreement with U.S. Water that included (1) a covenant not to compete with U.S. Water during the 18 months following his termination and (2) a provision forbidding Storm from disclosing — at any time during or after his employment — confidential information that he learned while he was employed by U.S. Water. On April 30, 2012, Storm tendered his resignation from U.S. Water, *see* ECF No. 54-14, and he began working for defendant Watertech of America, Inc. ("Watertech") the next day, *see* Storm Decl. ¶ 15 [ECF No. 49]. U.S. Water and Watertech are competitors.

This matter is before the Court on the motion of U.S. Water for a preliminary injunction against Watertech and Storm.[1] U.S. Water alleges that Storm has violated the covenant not to

---

[1] In addition to U.S. Water's motion for a preliminary injunction, this matter is also before the Court on defendants' motion to dismiss U.S. Water's complaint for failure to state a claim
(continued...)

compete by contacting U.S. Water's customers during the 18-month non-compete period. U.S. Water also alleges that Storm has violated the confidentiality provision by disclosing confidential information about U.S. Water's "MP5000" and "VOxOUT" products. U.S. Water seeks a preliminary injunction that would, among many other things, prohibit Storm from contacting any customer of U.S. Water and prohibit Watertech from using U.S. Water's confidential information.

The Court conducted a hearing on U.S. Water's preliminary-injunction motion on September 30, 2013. For the reasons set forth below, U.S. Water's motion is denied.

## I. STANDARD OF REVIEW

In determining whether to grant a motion for a preliminary injunction, the Court considers four factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between this harm and the harm that the other parties will suffer if the injunction is granted; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Preliminary injunctions are extraordinary remedies, and the party seeking a preliminary injunction bears the burden of establishing its entitlement to such relief under the *Dataphase* factors. *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

---

[1](...continued)
upon which relief can be granted. ECF No. 7. After that motion was filed, however, U.S. Water was granted leave to amend its complaint, and the original complaint has since been superseded by a more detailed amended complaint. Defendants acknowledged at the September 30 hearing that their motion to dismiss has largely been rendered moot by the amended complaint. Accordingly, defendants' motion to dismiss is denied without prejudice.

## II. COVENANT NOT TO COMPETE

The parties are familiar with the facts, so they will not be recounted at length.

At the time he was hired by U.S. Water, Storm signed an employment agreement that included a covenant not to compete with U.S. Water "for a period of 18 months after termination . . . ." ECF No. 34-2 at 1. U.S. Water alleges that Storm has violated this covenant not to compete, and it seeks an injunction preventing further violations.

It appears that Storm may indeed have violated the covenant not to compete, although Storm's defenses are far from frivolous, and Storm's alleged violations appear to have been few, minor, and nonconsequential. That being said, the Court cannot find that U.S. Water will be irreparably harmed if Storm is not enjoined from further violating the covenant. The covenant expires on October 30, 2013[2] — that is, in four weeks — and, at the Court's request, defendants have agreed that Storm will have no contact with any of U.S. Water's customers (including any facility operated by Valero Energy Corporation ("Valero")) before October 30. *See* ECF No. 60.

---

[2]At the September 30 hearing, U.S. Water argued that, for two reasons, the covenant not to compete does not expire on October 30, 2013. First, U.S. Water argued that the agreement signed by Storm contains a provision that tolls the non-compete period during any period of violation. Second, U.S. Water argued that, under Minnesota common law, a contractual non-compete term automatically *resets* upon violation. In other words, U.S. Water argued that if Storm is shown to have violated the covenant not to compete, then he is prohibited from competing with U.S. Water for *another* 18 months following the date of that violation.

Both arguments are meritless. First, contrary to U.S. Water's assertion, the agreement signed by Storm does not include a tolling provision. Second, U.S. Water has not cited (and the Court has not found) any judicial decision holding that, under Minnesota law, a violation of a covenant not to compete automatically resets the term of that covenant. Given that "[i]n Minnesota, employment noncompete agreements are looked upon with disfavor, cautiously considered, and carefully scrutinized," *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998) (quotation omitted), the Court doubts very much that any Minnesota court would give an employer a "fresh set of downs" every time a former employee violates a covenant not to compete.

In other words, defendants have voluntarily agreed to provide all of the relief that the Court would provide in an injunction. The Court therefore denies this component of U.S. Water's motion for preliminary relief. *See Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) ("[A] 'failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction . . . .'" (quoting *Watkins*, 346 F.3d at 844)).

### III. CONFIDENTIALITY PROVISION

Along with the covenant not to compete, Storm's employment agreement with U.S. Water also included a provision prohibiting Storm from disclosing confidential information learned during his employment with U.S. Water. *See* ECF No. 34-2 at 2-3. U.S. Water contends that Storm violated this confidentiality provision in three ways. First, U.S. Water alleges that Storm disclosed the formula for MP5000 to Watertech,[3] and that Watertech then used the formula to develop a knock-off product. Second, U.S. Water alleges that Storm disclosed the formula for VOxOUT to Watertech,[4] and that Watertech then modified the formula for its competing "Envirotrol" product. Third, U.S. Water alleges that Storm has disclosed confidential pricing information about MP5000 and VOxOUT to Watertech. The Court will address each allegation in turn.

#### A. *MP5000 Formula*

U.S. Water alleges that, shortly after Storm resigned from U.S. Water, Watertech developed a product substantially similar to MP5000 and began marketing this knock-off

---

[3]MP5000 is described as "a cooling water product which is used for scale and corrosion control." ECF No. 33 at 6.

[4]VOxOUT is described as "a chemical compound used to scavenge or quench volatile organic compound emissions from fuel ethanol CO2 scrubbers." ECF No. 33 at 6.

product to prospective customers. U.S. Water does not name the competing product, but Watertech identifies it as "Watertech 5765," *see* ECF No. 47 at 2, and U.S. Water does not appear to dispute that identification. According to U.S. Water, the fact that Watertech developed and marketed Watertech 5765 shortly after Storm departed from U.S. Water provides strong circumstantial evidence that Storm must have revealed the formula for MP5000 to Watertech.

But the only evidence in the record about the development of Watertech 5765 is an affidavit from Joseph Russell, Watertech's president, in which Russell swears that Watertech developed and marketed Watertech 5765 several years *before* hiring Storm. *See* Russell Decl. ¶ 7 [ECF No. 48]. In addition, Russell attests that Watertech has not modified Watertech 5765 since hiring Storm. *Id.* ¶ 31. U.S. Water has produced no evidence contradicting Russell. In light of this evidence, the Court cannot find that U.S. Water is likely to succeed on its claim that Storm violated the confidentiality provision of his employment agreement by giving the formula for MP5000 to Watertech.

## B. VOxOUT Formula

U.S. Water also alleges that Watertech changed its formula for Envirotrol shortly after employing Storm. According to U.S. Water, this provides strong circumstantial evidence that Storm must have revealed the formula for VOxOUT to Watertech. There are at least three problems with U.S. Water's argument:

First, U.S. Water's opening brief in support of its motion accuses Storm of disclosing only the formula for MP5000, not the formula for VOxOUT. U.S. Water did not accuse Storm of disclosing the formula for VOxOUT until U.S. Water filed its reply brief, which meant that

Storm and Watertech had no opportunity to respond to that accusation.[5] The Court will not consider a claim made for the first time in a reply brief. *See Gearin v. City of Maplewood*, 780 F. Supp. 2d 843, 866 n.23 (D. Minn. 2011) (declining to consider argument made for the first time in reply brief); *cf. Smith v. United States*, 256 Fed. Appx. 850, 852 (8th Cir. 2007) ("the district court did not err in dismissing claims raised for the first time in a . . . reply brief.").

Second, the only evidence cited by U.S. Water in support of its argument is an affidavit of U.S. Water President and CEO Allan Bly, in which Bly attests that two representatives of Hydrite Chemical Company ("Hydrite") — which manufactures both VOxOUT for U.S. Water and Envirotrol for Watertech — informed him that Watertech changed the formula for Envirotrol on or about May 2012. *See* Second Bly Aff. ¶¶ 32-33 [ECF No. 54]. This evidence is problematic for several reasons: Although Bly identifies two Hydrite employees by name in his affidavit, he does not say which specific Hydrite employee told him that Watertech had altered the Envirotrol formula; the statements purportedly made by these Hydrite employees are inadmissible hearsay; and the only admissible evidence in the record regarding this issue is an affidavit from Russell, in which Russell swears that Envirotrol's formula has not been changed since Storm was hired by Watertech. *See* Russell Decl. ¶ 31.

---

[5]The only hint of this argument in U.S. Water's lengthy opening brief is the statement that "Storm and Watertech are now soliciting the U.S. Water customers Storm managed while with U.S. Water by using U.S. Water's goodwill, U.S. Water's confidential, trade secret and proprietary information (VOxOUT and MP5000), and the relationships Storm developed while at U.S. Water as a U.S. Water employee." ECF No. 33 at 28. This cryptic statement did not come close to putting Storm and Watertech on notice that U.S. Water was alleging that Watertech had modified Envirotrol based on confidential information revealed by Storm about VOxOUT.

Third, even if U.S. Water had evidence that Watertech changed the Envirotrol formula in or around May 2012, neither Bly's affidavit nor any other evidence in the record demonstrates *how* the Envirotrol formula changed.  The alleged change to the Envirotrol formula would not provide circumstantial evidence that Storm had disclosed the VOxOUT formula unless the change to the Envirotrol formula made it identical (or at least closer) to the VOxOUT formula.

For these reasons, the Court cannot find that U.S. Water is likely to succeed on its claim that Storm violated the confidentiality provision of his employment agreement by giving the formula for VOxOUT to Watertech.

*C.  Pricing of U.S. Water Products*

Finally, U.S. Water alleges that Storm gave Watertech confidential information about U.S. Water's pricing of VOxOUT and MP5000.  The Court will address each product in turn.

First, as to VOxOUT:  In support of its accusation, U.S. Water relies entirely on a March 20, 2013 email sent from an employee of one Valero facility to an employee of another Valero facility, in which the author states:  "Prior to using [Envirotrol], we used VOxOUT, a similar product from US Water — essentially the same thing, but eventually we were able to get a better price from Watertech."  ECF No. 34-4 at 7.  Citing that email, U.S. Water contends that "Watertech offered a lower price to Valero for Envirotrol based upon Storm's knowledge of U.S. Water's pricing, specifically as it relates to VOxOUT and Valero and based upon Storm's knowledge of Valero's product and service demands while a U.S. Water customer during Storm's employment."  ECF No. 33 at 18.

U.S. Water's allegations outrun the evidence.  To say that Valero "[got] a better price from Watertech" is not to say that Valero got a better price because Watertech got confidential

pricing information from Storm.  Valero easily could have "[gotten] a better price" from Watertech in any of the entirely legitimate ways that buyers typically get better prices from sellers.  Most obviously, Valero could have just *told* Watertech what it was paying for VOxOUT and asked Watertech if it could beat that price.  Moreover, nothing in the email cited by U.S. Water suggests *when* Valero got the "better price."  It is entirely possible that Valero got the "better price" long before Watertech hired Storm.  And, in fact, that is precisely what Russell claims.  In an affidavit, Russell swears that Watertech began supplying Envirotrol to the Valero facility several years before Watertech hired Storm, *see* Russell Decl. ¶ 21, and U.S. Water has submitted no evidence to the contrary.

Second, as to MP5000:  U.S. Water's allegation that Storm disclosed confidential information about the pricing of MP5000 is similarly unsupported by any evidence.  The only reference to MP5000 found in the emails between Watertech and Valero is a statement from Russell that he was "working on competitive product pricing for MP5000 but want[ed] to make sure that we are quoting an identical or very similar product."  ECF No. 34-4 at 1.  This email provides little or no evidence that Storm revealed confidential pricing information about MP5000; indeed, the focus of the email is Russell's effort to make sure that he was quoting an appropriate *product*, not that he was quoting an appropriate *price*.  Watertech has the right to compete with U.S. Water, including by offering Watertech 5765 to customers who have used or are considering using MP5000.  And, obviously, Watertech has to quote *some* price to prospective customers.  Thus, the fact that Russell said that he would quote a price for Watertech 5765 provides little evidence that Storm improperly disclosed pricing information about MP5000.

For these reasons, the Court cannot find that U.S. Water is likely to prove that Storm gave confidential information to Watertech in violation of the confidentiality provision in his employment agreement. The Court therefore denies this component of U.S. Water's motion for preliminary relief. *See CDI Energy Servs., Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) ("With no likelihood of success on the merits, there is little justification for granting a preliminary injunction . . . .").

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion of plaintiff U.S. Water Services, Inc. for a preliminary injunction [ECF No. 31] is DENIED.

2. Defendants' motion to dismiss [ECF No. 7] is DENIED WITHOUT PREJUDICE.

Dated: October 3, 2013

 s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge